Council, if you're going to be doing demonstrations, we want a screen in front of us. You've got to be. We'll let you play through, Mr. Cannon, and you're reserving seven. Yes, your honor. Okay, go ahead, please. May it please the court, Nassau's appeal here is really premised on two basic principles. Is claim one a product by process claim? Yes, it's a product claim by process. Yes, your honor. Really, I guess I haven't heard that at all before. I mean, a product by process claim is still a product claim. Absolutely, your honor. It is a product claim. But it doesn't say a golf club made by a method. It says in a golf club, we claim a method of doing something. You've insisted from the beginning here, including I think in both of your briefs, that this is actually a method claim. I understand that the general tenor of the thing suggests it should have been a product claim. That's the way we interpret it. I mean, it seems to be more of a product claim, but there is some language in there that, you know, I'd like to say makes it a little, you know. Have you argued before you answered this question in this case? Just now, have you ever argued in this case that this is actually a product claim, one whose features are defined as the result of a particular process? It is my understanding that our position is that this is a product claim. Both the asserted claims recite a series of steps. Yes, your honor. How would the accused clubs infringe the recited series of steps? For example, if the accused products are molded into their final form without the removing and relocating of material as the claims require, would they infringe? I'm sorry, could you say that again? Sure. If they're molded into their final form without that removing and relocating of material as the claims require, because they specifically talk about that being done in steps, would they still infringe? Your honor, the way we perceive the claim is that these steps, the removal of weight is part of, it's sort of a conceptual, it can be considered sort of conceptually. Nowadays, a lot of these products are made on computer models. So you're not necessarily, the prototypes or the samples are often made on a computer model. So you're not physically necessarily moving structure. You sort of virtually, in the electronic sort of world, you're moving things around. So in that sense, you're taking weight from various parts of the top, from the middle top part in this case, and you're moving into the toe and the heel of it, and you're using different construction materials. It could be steel, polymer, in this case, a combination of steel and polymer, some other materials. So it's not really, you don't take a piece of iron and scrape off a part of it and then add something on there per se. Really what's happening is they use, as our experts at least describe to us, is when we talk about, and in the context of one that has ordinary skill in the art, maybe looking at how we're going to get the weight removed from a top part of this club. So the claim is describing the overall design concept for a product claim, and it's using some method-like language to describe that design concept, but nevertheless, it's a design concept. It's a product design like the district court judge, I think, held, and I think we agree with that. It's a product design. That still wouldn't be a product-by-process claim, right? A product-by-process claim says a product that results from the actual performance of an identified process. So even if you have that, then you might be able, as you have, to accuse the clubs, the making and selling of the clubs, if you could show that, I guess in your view, the designer sitting in front of the computer screen with a CAD program on there actually started with a club, kind of a traditional club, and said, oh, let's shift this down to here, et cetera. But you would still have to prove that the designer did that. Your Honor, your first question when we started this discussion, you asked me if this is a product-by-process, and I didn't internalize that, and I know it's not a product-by-process, but really a product design sort of. So it's a product claim written in method language that doesn't even require the performance of a method. What kind of claim is that? Your Honor, I didn't draft it, but the way we look at it is sort of a product design. And the reality, I mean, in fairness to the party who drafted it and the inventor, the reality of the way in which these products are actually made, as I've learned to understand from the experts in this, is that, again, you're not using physical materials, you're using software, as Your Honor has alluded to, sort of CAD drawing, and you're sort of moving, using, saying I want to combine various construction materials, and I'm going to move certain grams from this part to that part. So there is a design method embedded in your forming the product, but then once you come up with this, I want to keep the club to have this many grams, for example. You put that in your protocol. I want 258 grams, but I want, instead of our sort of traditional design, where there's this many grams on top, this many grams at the bottom, I want this many less grams. Now, what kind of various materials could I use and replace with steel various densities to make that movement of grams? Is this your answer to the question that this is the kind of terminology that people of skill in this art, golf club head designers, use when they describe the overall design concept for a golf club head? Yes, Your Honor. That's a very fair description of the way I understand it. Evidence of that would be Accushnet's own patents that talk likewise in the same manner. Yes, Your Honor. Precisely. Redistributing weight or material from one part of a golf club head to another part. Absolutely, Your Honor, and also the experts themselves. But the actual, I think I'm remembering, Craig, tell me if I'm wrong, that while the language that was just referred to in the Accushnet patent, in the specification, is quite like this language, the claims show exactly how you claim a product when that's what you're trying to do. And those claims don't have any language about method like this. They say they are straightforward, legitimate, traditional product claims. The claims are a bit different. Yes, I agree with you, Your Honor. But that's only, I think that the drafter and the inventor in drafting these claims, but they're struggling to try to capture the thought process of the product designer. And in doing that, perhaps, and we could... Well, obviously, my concern is this. The patent, as a very general term, seems to be about a certain kind of club, with certain kinds of features. To get there, I'm concerned about just how much violence one needs to do to extremely traditional claim language that's written in terms of methods. All the claims are method claims. There must be a limit to our ability to say, we kind of know what this patent is about and is getting at, and we will ignore language that everywhere else has a standard meaning. Method, a series of steps taken. And I think you are asking us to do that by treating the claims as product claims that embody a certain set of design principles. In a sense, the way the claims are being read, or we're asking the court to read, or we're reading the claims, is really how one with ordinary skill in the art would read these claims, we believe. Granted, again, we can see that the language, perhaps, is not perfect or traditional completely, as Your Honor puts it. But one with ordinary skill in the art could read these claims and understand, well, I'm not actually taking a product and taking it through these various steps, in a sense. Really what I'm doing is going through this. The method is more in the mind of the inventor working on a software, putting in the various... Mr. Cato, just so you realize you're eating your response time. Okay, I would like to just point out... That's fine. I'll take a couple minutes of that and then go into my response time. I like informed consent. Thank you. This appeal really is about, as I was pointing out, two principles of claim construction that we respectfully believe the district court made an error to it. One is, in construing a claim, they're to be given their broadest reasonable interpretation consistent with the specification. So even if the language is not perfect and there's some inconsistency... I'm sorry, a court is supposed to do that? I thought that's what the PTO does. Well, the claim is to be interpreted that way by a court. And the PTO does that, but when a judge is sitting in a place to interpret and construe a claim... This is from Phillips, 1415, Federal Third, 1303, 1316. It's to be viewed... The claim is to be viewed in a sort of broadest sense consistent with the specification, unless there's some prosecution history or something else that limits it. And here... And the intrinsic evidence really is what controls. The courts look at the specification, the prosecution history, the background, et cetera. In this case, the district court erred because instead of looking at the intrinsic evidence we submit, they went out and looked at the testimony of experts. And in doing so, they so went off track, and the court so went off track, is that the claim now doesn't even read on the preferred embodiment. The Claim 1 doesn't read on the preferred embodiment the way the district court judge respectfully interpreted Claim 1. And we think that is going against one basic principle of patent law. The second issue, Your Honor, Your Honors, is that on Claim 2, the district court sort of did the opposite thing. The district court respectfully erred in limiting the claim to the preferred embodiment. That basically looked at Figure 8 and Figure 10, and the patent said, how do I get there? I have to remove weight, and then I have to add some polymer to it. And as I've been trying to explain, and as my understanding of the process, that's not how it works. Well, it's really a computer software process of design, a product design, and the law is very clear. That's just a preferred embodiment. And I will stop there, and I will save the rest of my time for rebuttal unless there's any further questions. Your Honors. You only have three minutes. Thank you. Good morning, Your Honors. I think the questions that you offered kind of crystallizes the problem that we've had with this case from the outset, which is they have treated this case like a product case, looking at the final product, and from that have inferred what the method was that was practiced. Claim 2 clearly is a method claim. I don't think there's any doubt about that. Claim 1 is a very convoluted claim that resulted from amendments that occurred during prosecution. Is it a product-by-process claim? I believe it's a method claim, not a product-by-process claim, but I would offer that I think it's a distinction without a difference because in Atlantic Thermoplastics, among other cases, the court was clear that you still have to prove the method to get to the product anyway. So I think we end up at the same place. But you don't think it's a product-by-concept claim? I do not, not the way it's phrased. It's certainly not the traditional way a product-by-process claim would be phrased. I think it's a messy claim that resulted from two, a product claim and a process claim somehow being combined. At the end of the day, I view it as a method claim. But as I say, I don't think it matters substantively because they still have to prove the process, even if it's a product-by-process. You say in your brief that the process required might be either of two things, the actual manufacturing process or even if it might be the process followed by the designer sitting in front of the computer screen. Put aside the manufacturing process for now. You say that there is insufficient evidence that the accoutrement designer took what are really only two steps, namely remove material from the top and stick it on the bottom, even on the computer screen. And while it appears that there certainly is no direct evidence of that, why would the indirect evidence not be sufficient for a jury to find that the designer did that? Because that's kind of how you start with a club on the screen and you move stuff around, seemingly supported by the description in the accoutrement specifications of just that. It's not direct evidence, but why is it not sufficient to support an inference that that's what the designer did? I think that the indirect evidence is two-fold that they raised. The patents, as you observed, and the marketing materials. With regard to the patents, the inventive process that Mr. Scirocco went through was a process where he came to the inventions, the claims of which are embodied in the patent. And as you observed, the claims are apparatus claims. We don't practice the specification. There is no evidence that during the actual design, which was done by Mr. Roche, somebody different from Mr. Scirocco, that he employed any of the methods that Mr. Scirocco did in coming up with an inventive process years before. So from that standpoint, that is not evidence of what was done to design and develop the clubs. That is only evidence of what Mr. Scirocco did during the inventive process to come up with an idea ultimately embodied in the accused clubs as apparatus claims. With regard to the marketing materials, which are the appendix of 1303 and 1304, what's most enlightening about that is that it's under the heading of performance benefits. We do not run away from those marketing materials, notwithstanding what the plaintiff has said. Those marketing materials are entirely accurate for the purpose in which they were intended, which is to explain what the performance benefits were. So that would be the only indirect evidence. The direct evidence that's in the record, more importantly, is completely unrebutted and in fact is acknowledged by Mr. Parenti, their liability expert. He had in front of him the Scirocco patents. He had in front of him the marketing patents. His unequivocal testimony was he didn't know how the design process was done. Now, we did give them all the CAD drawings. We did, of course, make the designer available for deposition. And the only thing in the record as to what the process was is that he did not start, as you suggest, could have been the case. You said that you made the designer available for deposition. Was the deposition taken? Yes, it was Mr. Roach. Mr. Roach explained what the process was and he explained to your specific question that they did not start from a traditional club head and take material electronically or otherwise. They started from scratch because this was entirely... Would a jury be entitled to disbelieve him? If there were some contrary evidence. But I don't think a jury can speculate based on marketing materials that talk about performance benefits or based upon patents that talk about something that happened in specification and not in claims. Did the district court opinion go through all of this analysis? On ultimately concluding no infringement? I thought the district court really only looked at that top line channel question. Well, we actually disagreed with the district court in this because the district court concluded that it was a design process not a manufacturing process but then never took the next step which we had raised in our papers which is even if it's a design process, we don't practice it. So I guess I'm wondering should we really be entertaining these arguments right now when we don't have anything below that made these sorts of findings? Well, the case law is clear that the court can affirm a judgment on any argument raised below. So it's not necessary that the court have raised it and considered it as long as we raised it and considered it. How about the no adverse consequences limitation? Yes. Was that raised? Was that properly before this court? Was it properly raised below? Oh, yes. Yes, that was raised below and was not, again, not a basis. The court focused on a location not used very much by the district court judge. Yes, he didn't focus on the no adverse consequence neither in the context of the insufficiency of the evidence nor on the indefiniteness piece. On that point or on both of those points, what is very clear I'm going to do this in reverse order actually and do the infringement before I get to the indefiniteness which would be claims construction. If it can be construed, there's a very clear admission from Mr. Parente that the only way to determine whether a consequence was adverse and there's no dispute in the record that there is a consequence when you engage in these kinds of developments of cause. The only way you can determine whether it's adverse is by doing testing, whether it's player testing or robotic testing. He is unequivocal in the record on that, equally unequivocal in the record is no such testing was done. So there's a complete insufficiency of evidence with regard to no adverse consequence if indeed we can actually determine what it is. The other problem with that limitation is that it is hopelessly indefinite because it is inherently subjective. And again, I'll rely upon Mr. Parente who they've offered as a person of skill in the yard. If you look at their own brief on page 31, they go through a list of the things that Mr. Parente has said with regard to how the claims to be interpreted, the limitation is. And he says things like, it's pretty much decided by the individual. And I'm quoting verbatim. He says that the definitions between people of skill in the yard can vary. And again I'll quote, adverse consequence in the patent, it's up to you to understand. It's less than what you intend. So we have this anomalous situation where the inherent goal of the patent is to increase the height of the struck ball. That may be a great result for me, a lousy golfer. I need more height on the ball. Tiger Woods, a little less so. He wants more. He doesn't want that height that I want. So we have a kind of a classic indefinite in this case because a Kushnick could do the exact same thing under Mr. Parente. They're experts in construction. A Kushnick could do the exact same thing in one instance and it does infringe because there's no adverse consequence to me and do the exact same thing and not infringe because to Tiger Woods there is an adverse consequence. And that is kind of the poster child of indefiniteness. The other reason we don't necessarily need to get to the issues whether it's a design or manufacturing patent or whether there's sufficiency of evidence is because of the problem they have with the determined weight limitations in Claim 2. So in Claim 2, unlike Claim 1, is clear. Now I would observe first, this came up in the prior argument, this is a very clear waiver situation. We raised in our initial summary judgment papers that the determined weight limitations were not met. They didn't respond to the opposition. We raised it again in our reply. We raised it again in oral argument down below. And during oral argument, they didn't respond to it then. Ironically, when we raised it again in our papers, they didn't respond to the waiver argument in their opposition. So I know it's certainly within the court's discretion whether we do this as a second circuit or a federal circuit issue because their arguments are not entirely clear whether it's a claims construction argument. But regardless, they had the opportunity, they had the obligation to raise these issues with the district court. The district court can't be found to have been in error in not responding to arguments never raised. So we think there's a serious waiver problem. But independent of the waiver problem, they clearly have not met this limitation because Claim 2 is clear. Claim 2 has several steps. There is a first step of removing construction material. Now the only thing that they have claimed in that step is the existence of a channel in the top line. There is a space there. And they have concluded, and this goes to the problems we raised earlier, that because there is a channel there, there must have been steel there at some point in time. There is no evidence of that. They proffer nothing. But if I accept that as true for purposes of this discussion, that is the removed material. The claim then goes on to say that the next step is determining the weight of said removed construction material. The third step is in the lower areas embodying said removed construction material having said determined weight. It's very clear that whatever the weight is of that steel has to be found while we're in the clubhouse. So the problem they have, it's also undisputed that after this supposed removal was done, that the polymer insert was put in. Your accused club, there's no material taken away from any aspect of the front face of the golf club head. Is that right? There's a channel that's hollowed out along the top surface, but you can't see that channel necessarily if you're looking straight at the face in a particular fashion. That's correct, and I think that would get to the issue of location not used during false record service, which I'm happy to address as well. Can you just finish? I'm interested in that too, but just finish on your claim two point. Why would it not be correct to say, picking up on your language, about after the embodying below of the steel that one assumes came out of the channel, at least conceptually, at that moment claim two is satisfied. No change of net weight. What happens thereafter, namely the insertion of the little plastic thing, does in fact change the weight, but where does this claim say that the ultimately sold, completed club can't have a different weight from what it was... I don't know how to finish that sentence. Which is part of the problem with the... These claims are dreadfully unclear. I agree with that. But just on this point, the district court's logic was, the weight changes even if you move everything, all the metal from top to the bottom, because you've added plastic. The question is, why does the claim not read on what happens before you added the plastic? The claim reads this way. First, we remove the steel in the channel, hypothetically. Let's call that 10 grams. You have to determine the weight of what was removed. The determined weight of the removed material is 10 grams. The problem is, because the overall weight must remain the same, we agree that limitation has been met, only 8 grams are actually moved lower in the club head, because 2 of the grams are made at the top. I'm sorry, so it is agreed that the club has the same weight after the insertion of the plastic. Yes, we don't dispute that. This would be a point that seems actually essential to your argument. Yes, it is essential to our argument. I agree. So we're clear. Fundamentally, at the end of the day, hypothetically, 10 grams was removed. Only 8 grams was replaced lower. And I'm sorry for diverting you from the ground of the case. No, I appreciate it, Your Honor. The location, so the other basis that the court identified was the limitation in Claim 1 of the location not used during ball striking service. That actually, at the end of the day, is not complicated. It has the words, location not used during ball striking service. The undisputed evidence in the record, again from Mr. Parente, who admits it, and also from all the data that we supply of where balls are actually hit, is the top middle, where the removal allegedly occurred, is used. Very simple. Of the accused clubs, the undisputed... Turns out good, Your Honor. And believe me, I'm sure I hit it a lot more than other people do. But the reality is, the intended shot is always the sweet spot. The other reality is that we never actually consistently hit the sweet spot, even the best... So your time's up. Okay. Thank you, Your Honor. Okay. You've got three minutes. Thank you, Your Honor. I'd like to address this point about indefiniteness and no adverse consequence. Your Honors, the defense, or Acquistion's counsel, keeps on arguing about testing in Mr. Parenti's testimony. The specification itself makes very clear about when there is no adverse consequence and when there is. So we don't need to look outside of the record. This is an issue that the district court did not actually decide. Yes, Your Honor. The district court did not decide this issue. Can I focus on some of the issues the district court decided? Absolutely. We're just rebutting the argument. I understand. Is it agreed... Do you agree that the clubs that they... the clubs after the plastic insert has been inserted are of the same weight as they were before the metal was moved? It is my understanding that the net weight is the same. So you're moving... After the plastic insert... Yes. It is my understanding it is the same. And on that point, again from the way in which we understand and the experts understand how these clubs are made, the construction material is not limited to steel or polymer. So you have a design that has a mixture of steel and polymer and again you're moving grams by varying the density of the material at the top versus the bottom. So you're moving grams from the top to the bottom. But this is a sort of fictitious or arbitrary conception that there's a step. First we have to cut off the top and then... That's the preferred embodiment where we have to cut off the top and then we add in this polymer. Why do we have to do it... Why are we limited to doing it that way per the language of the claims? The language of the claims just is a predetermined weight. Okay, we determined that we're going to move 8 grams from the top to the bottom. As a practical matter, nobody's cutting a club head and scraping weight off of it. We're using CAD drawings and CAD designs and computer models to take weight so we can say we have a mixture of construction materials and we're moving weight down. There isn't really taking it off and adding it on. So this is sort of an arbitrary and sort of manufacturing process argument that accretionist lawyers continue to make. But this claim is not a manufacturing process. Whatever it is, it's not a manufacturing process. All it states is that it's a method. A method of moving weight down. And this method is used by Kushnitz's own patent attorneys, inventors, the way they describe it. It's the way everybody describes it and understands it. It's that you're moving grams down and you're moving weight around by varying the density of the construction materials. Ten seconds, sir. Okay. So for these reasons, and again, an indefinite issue, the court does not raise in the district court, but we're just rebutting it that the intrinsic evidence answers that question that it's not indefinite.